BARBERINO REALTY AND DEVELOPMENT CORPORATION
*v.* PLANNING AND ZONING COMMISSION OF THE
TOWN OF FARMINGTON ET AL.
(9067)

SPALLONE, DALY and LAVERY, Js.

Argued March 26—decision released August 6, 1991

*Robert J. Reeve,* with whom, on the brief, was *William L. Wollenberg,* for the appellant (plaintiff).

*Joseph L. Hammer,* with whom were *Palmer S. McGee, Jr.,* and, on the brief, *Susan J. Barnes,* for the appellees (defendants).

LAVERY, J. The plaintiff (Barberino) appeals from the decision of the trial court affirming the denial of its site plan application by the planning and zoning commission of Farmington (commission).

In its statement of issues on appeal, Barberino raises five claims. Pursuant to Practice Book § 4013, the commission filed a counterstatement of issues giving five reasons why the trial court's judgment should be upheld, including alternate grounds on which we may sustain that judgment.

The statement of issues and counterstatement of issues present two questions dispositive of this appeal. First, whether Barberino's application was for approval of a revised site plan only, or whether it was an application for a revised special permit and revised site plan approval combined. Second, whether the reasons articulated by the commission for its denial of the application were based on standards found within the Farmington zoning regulations. We disagree with the trial court's finding that under the applicable zoning regulations the reasons articulated by the commission provided an appropriate basis for denying the plaintiff's application for site plan approval.

The relevant facts are as follows. Barberino owns 9.699 acres bordering Main and Tunxis Streets in Farmington. In 1978, the commission granted Barberino a special permit to construct seventy units of elderly housing on 8.3 acres of the site. Elderly housing is a permitted use in Farmington upon the issuance of a special permit. The approved special permit allowed the construction of ten scattered small scale buildings on the subject property. As one of the conditions of approval, Barberino was required to relocate the entrance to the development from its proposed location at the dead end of Tunxis Street to a point closer to the intersection of Tunxis and Main Streets. A neighboring property owner appealed from the commission's decision to grant the special permit. That appeal was subsequently dismissed by the Superior Court. *Kagan* v. *Planning & Zoning Commission,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 148268 (November 21, 1980). Barberino never constructed the project as designed and approved in 1978.

In 1988, Barberino filed a new application with the commission for site plan approval to construct a single building containing seventy units of elderly housing and

for approval of a subdivision of the property into three lots; two lots for single-family residences and one lot consisting of 8.55 acres for the development of the seventy units of elderly housing. Timely legal notices were published in the Farmington News noticing a public hearing at which the commission would consider an application for a "3 lot subdivision of 9.699 acres and *site plan approval* for 70 units of elderly housing . . . ." (Emphasis added.)

At the hearing held on December 12, 1988, the commission denied both applications stating the grounds for their denial as follows: "VOTED: to deny without prejudice the Barberino Realty & Development, Inc. revised site plan for 70 units of elderly housing and subdivision plan for Lot 1 Main and Tunxis Streets.

"Members felt that this revision was not in keeping with the scale of adjacent homes; that the development of the western portion of the parcel was too intense; and the proposed driveway from Tunxis Street was located too close to the adjacent property. It was further recommended that the project be divided into two buildings and that the two proposed lots along Tunxis Street be combined into one."

The plaintiff appealed both decisions to the Superior Court. The trial court sustained the commission's denial of the revised site plan application and reversed the decision of the commission denying the subdivision application. The court found that the record did not support two of the commission's stated reasons for the denial of the site plan application, in that "the scale of the adjacent homes" and the "intensity of the development" were not criteria found within the Farmington regulations governing site plan approval. The court did, however, find that the commission's third stated reason for denying the application, namely, that the proposed driveway was located too close to the adja-

cent property, was proper under the regulations and was supported by the record. In its postjudgment articulation, the trial court indicated that the proposed driveway entrance violated Article IV, § 12 (B) (2) and (3) of the town's regulations.[1] Barberino appealed from the trial court's affirmation of the denial of the site plan application and we granted certification.

Resolution of this appeal requires that we first review the differences between a "special permit" and a "site plan." A special permit authorizes a use permitted by the zoning regulations subject to the applicant's meeting the standards set forth in those regulations. *W A T R, Inc.* v. *Zoning Board of Appeals,* 158 Conn. 196, 200, 257 A.2d 818 (1969). When deciding whether the granting of a special permit is appropriate, the agency must determine whether (1) the applicant's proposed use is permitted under the regulations, (2) the standards and the relevant zoning regulations are satisfied, and (3) the conditions necessary to protect public health, safety, convenience and property values can be established. See General Statutes § 8-2.

By contrast, we have determined that the term " 'site plan' " as it is used in General Statutes § 8-3 (g) is "a general term which is used in a functional sense to denote a plan for the proposed use of a particular site, purporting to indicate all the information required by the regulations for that use. As such, it includes the entire package of documents submitted to a zoning 'commission or other municipal agency or official to aid

---

[1] The Farmington Zoning Regulations, as amended to March 23, 1987, § 12 provides in pertinent part: "SPECIAL PERMITS, INTENT AND APPLICATION REQUIREMENTS . . .

"B. Standards for Granting of a Change of Zone or Special Permit . . .

"2. That adequate safeguards have been taken to protect adjacent property and the neighborhood in general from detriment;

"3. That traffic circulation within the site and the amount, location, and access to parking is adequate . . . ."

in determining the conformity of a proposed building, use or structure with specific provisions of such [zoning] regulations." *SSM Associates Limited Partership* v. *Plan & Zoning Commission,* 15 Conn. App. 561, 566, 545 A.2d 602 (1988), aff'd, 211 Conn. 331, 559 A.2d 196 (1989).

When an agency undertakes consideration of a site plan application, it has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated into the site plan regulations by reference. *Allied Plywood Inc.* v. *Planning & Zoning Commission,* 2 Conn. App. 506, 512, 480 A.2d 584, cert. denied, 194 Conn. 808, 483 A.2d 612 (1984). Under General Statutes § 8-3 (g), "[a] site plan may be modified or denied only if it fails to comply with requirements already set forth in the regulations."

The commission argues that the 1978 special permit was tailored to and based on the site plan submitted at that time, and, therefore, the submission of a radically different site plan in 1988 required a determination of whether the revised site plan continued to fulfill the requirements for an elderly housing special permit. The commission's appellate arguments indicate a total lapse of memory in its actions on the Barberino application and at the subsequent hearing.

It is undisputed that the application form filed by Barberino was for a site plan approval, and that the published legal notices for the public hearing stated that the hearing was for site plan approval. Nowhere in the record is there any legal document or published notice indicating that "a revised special permit" was sought. The commission accepted a site plan application, did not require a special permit application and noticed a site plan application hearing. The commission never questioned the proposed use of the property

and, in fact, when the denial of the site plan application was published, the commission recommended that "the project be divided into two buildings rather than the one proposed."

In 1978, the application for a special permit and site plan approval for the seventy units of senior housing in ten buildings was approved by the commission with the sole condition being a relocation of the development entrance closer to Main Street. In its 1988 application for site plan approval, Barberino did not seek to change the use of the property, but sought only to have the seventy units consolidated into one building instead of ten. The application, all legal notices, and the commission's written denial, all treated the application as one for site plan approval. In addition, a review of the transcripts of the commission's hearings on the application discloses that the commission affirmed the fact that the special permit issued in 1978 was still in effect and that the application before the commission was for site plan approval.[2]

---

[2] The following discussion took place between the commission chairman (Goodridge), the town planner (Ollendorf) and the plaintiff's representative (Donald) at the public hearing held on December 5, 1988.

"[Goodridge]: Jeff, I think my question should be directed to you. This is site plan and a subdivision. *Mr. Donald made reference to a special permit in 1978. That's still in effect?* That last forever?

"[Ollendorf]: *Yes. The special permit is in effect. Unless our regulations stipulate otherwise, yes.*

"[Goodridge]: I guess I'm a little confused. They've got 9.6 acres and it's R20 and they're asking for what I understand will be seventy-two. There'd be seventy dwellings in this housing for the elderly plus two houses on regular lots.

"[Donald]: You know that the two lots are for single-family use.

"[Goodridge]: Right, but we've got 9.6 acres and seventy-two dwelling units.

"[Donald]: Theoretically it could be ninety-six, but the special permit was issued for seventy units.

"[Goodridge]: How could it be theoretically be ninety-six, that's what my confusion is?

On the basis of the history of this case and the way the applications were treated by the commission and Barberino, we conclude that the submissions to the commission constituted a revised site plan rather than a new application for a special permit and site plan. Neither Barberino nor the commission complied with the application and hearing procedures required for a special permit.

Finally, in dismissing Barberino's appeal, the trial court found that the commission's stated reason, namely that the proposed driveway is too close to the adjacent property, finds a basis in the regulations and support in the record. In its memorandum of decision, the court stated that the site plan violated article IV, § 12 (B) (2) and (3) of the regulations. Section 12 (B) is titled "Standards for Granting of a Change of Zone or *Special Permit.*" (Emphasis added.)

Because § 12 (B) (2) and (3) refer not to site plans but to the standards that must be met when a special permit is approved, we disagree with the trial court. Subsections (2) and (3) of § 12 (B) set forth standards that must be met by the applicant and allow conditions that an agency may set when approving a special permit. In 1978, the commission set a condition in conformity with its special permit standards when it required the relocation of the driveway closer to the Main Street end of Tunxis Street. The commission's stated reasons for denial provided no guidance as to the manner in which the plan failed to meet the regulations and did not refer to § 12 (B) (2) and (3) in its decision.

"[Donald]: Ten units per acre.
"[Goodridge]: Ten units. For an R20?
"[Donald]: *For elderly, a special permit, for elderly in any zone.*
"[Goodridge]: *You've got a special permit for the elderly?*
"[Ollendorf]: *Yes.*
"[Goodridge]: *Ah, I understand. And this was granted in 1978?*
"[Donald]: *Yes. And upheld on appeal in 1980.*" (Emphasis added.)

Our Supreme Court has held that regulations that contain only "broad legislative statement[s] of purpose comparable to that found in § 8-2 of the General Statutes"; *Kosinski* v. *Lawlor,* 177 Conn. 420, 423, 418 A.2d 66 (1979); provide no standards for review in approving or denying site plans, and as such may be used "only in conjunction with and not as an alternative to the standards contained in the applicable zoning regulations." Id. The regulations that are the basis of the trial court's decision, article IV, § 12 (B) (2) and (3), contain the same infirmity. Those regulations require that the commission take "adequate safeguards" for the protection of other properties and provide for "adequate" traffic circulation and parking. The regulations provide no ascertainable standards for the regulation of the plaintiff's application, and indeed specific regulatory standards are found elsewhere in the zoning regulations and are complied with.

Finally, the commission urges us to affirm the judgment of the trial court on the alternate grounds for denial stated by the commission that the trial court did not find persuasive, namely (1) that the development of the western portion of the parcel was too intense, and (2) that the revision was not in keeping with the scale of the adjacent houses. The commission's argument on this issue fails as well because these criteria for denial of the application state general standards for consideration in the issuance of a special permit and are not site plan regulations stated with sufficient specificity like setbacks, coverage restrictions, and height restrictions that are found in the regulations and can be included in a site plan. *SSM Associates Limited Partnership* v. *Plan & Zoning Commission,* supra.

We disagree and conclude as a matter of law that Barberino's application was one for a revised site plan only and that the reasons given by the commission and

the trial court were not found in either the site plan regulations or in the zoning regulations.

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff ordering the commission to approve the site plan application.

In this opinion the other judges concurred.