BARBERINO REALTY AND DEVELOPMENT CORPORATION
*v.* PLANNING AND ZONING COMMISSION OF THE
TOWN OF FARMINGTON ET AL.
(14362)

SHEA, CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued February 14—decision released June 11, 1992

*Joseph L. Hammer,* with whom were *Charles W. Fortune* and, on the brief, *Palmer S. McGee, Jr.,* for the appellants (defendants).

*Robert J. Reeve,* with whom, on the brief, were *William L. Wollenberg* and *Edward F. Scully,* for the appellee (plaintiff).

BERDON, J. This appeal involves a zoning regulation that requires a site plan showing the specific project proposed to be submitted with an application for a special permit. The principal issue presented is whether, after approval of such a permit and site plan, a subsequent revision to the site plan must conform to the zoning regulations governing approval of such a special permit.[1] In 1978, the named defendant, the planning and zoning commission of the town of Farmington

---

[1] For purposes of this appeal, the applicable Farmington zoning regulations governing special permits are codified in article II, § 9, which regulates housing for the elderly, and article IV, § 12, which regulates special permits in general.

(commission),[2] granted a special permit to develop elderly housing to the plaintiff, Barberino Realty and Development Corporation. Several years later, the plaintiff returned to the commission seeking approval of an application for a revised site plan that materially altered the original proposal for the elderly housing project. The commission denied the plaintiff's application on the ground that the plaintiff had failed to comply with certain requirements set forth in the applicable special permit regulations.

The plaintiff appealed to the Superior Court, which affirmed the decision of the commission. The plaintiff then appealed to the Appellate Court, which reversed and held that the commission could not apply the conditions of the special permit regulations when considering the revised site plan application of the plaintiff. *Barberino Realty & Development Corporation* v. *Planning & Zoning Commission*, 25 Conn. App. 392, 594 A.2d 1025 (1991). Certification to appeal was granted and we reverse the judgment of the Appellate Court.

Because the decision of the Appellate Court succinctly relates all the facts, we will repeat only those facts relevant to this appeal. In Farmington, elderly housing is a permitted use upon the issuance of a special permit.[3] In 1978, the plaintiff, who owns a parcel of land bordering Tunxis and Main Streets in Farmington, applied to the commission for a special permit[4]

---

[2] The other defendants named in the case are Edgar A. King, the Farmington town clerk, and Robert W. Johansen, the chairman of the Farmington planning and zoning commission.

[3] In 1978, article II, § 5d of the Farmington zoning regulations governed the basic conditions applicable to special permits for elderly housing. Prior to the plaintiff appearing again before the commission in 1988, the applicable regulations were amended and codified in article II, § 9 of the Farmington zoning regulations. The changes in the regulations providing for elderly housing special permits do not affect the substance of this appeal.

[4] The zoning regulations of the town of Farmington were modified between the time the plaintiff was granted the special permit in 1978 and

to construct seventy units of elderly housing on 8.38 acres of the parcel. Pursuant to the applicable zoning regulations, the plaintiff simultaneously submitted a site plan detailing the specific project proposed. The site plan proposed the construction of approximately thirteen separate small scale buildings, each containing either four or six dwelling units.

After holding a public hearing on the plaintiff's application, the commission approved the 1978 application for the special permit with certain modifications to the site plan, one of which was the relocation of the entrance to the development from its proposed location at the far end of Tunxis Street to a point closer to the intersection of Tunxis and Main Streets. Neighboring property owners unsuccessfully appealed to the Superior Court from the commission's decision to grant the special permit. The plaintiff, however, never commenced construction on the project as designed and approved in 1978.

On July 1, 1988, the plaintiff filed an application with the commission for approval of a revised site plan, which proposed the development of what was basically the same site that the plaintiff had been given a special permit to develop in 1978. Instead of the original proposal of thirteen small scale buildings to accommodate the seventy dwelling units of elderly housing, however, the revised site plan proposed a single two and one-half story building containing seventy units. Timely legal notices were published in the Farmington News noticing a public hearing on the plaintiff's application for site plan approval. The public hearing was held on

the time it applied for the revised site plan approval in 1988. The applicable regulations were modified to replace references to "special exceptions" with references to "special permits." The terms are synonymous in Connecticut usage and are used interchangeably. *A.P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 185, 355 A.2d 91 (1974).

December 12, 1988, after which the commission voted to deny without prejudice the plaintiff's application for a revised site plan.

The plaintiff appealed the commission's decision to the Superior Court. The trial court denied the appeal from the commission's denial of the plaintiff's revised site plan application. The plaintiff obtained certification to appeal from the trial court's judgment to the Appellate Court. On appeal, the plaintiff argued that, once a site plan has been approved in conjunction with a special permit application, any subsequent revision to the site plan is required to conform to the criteria set forth in only the site plan regulations rather than the special permit regulations. The Appellate Court agreed with the plaintiff and reversed the judgment of the trial court.

This court then granted the commission's petition for certification limited to the following issue: "When a zoning regulation requires a site plan showing the specific project proposed to be submitted with an application for a special permit, after approval of such a permit and site plan, must a later revision of the site plan conform to the zoning regulations for approval of such a special permit?" *Barberino Realty & Development Corporation* v. *Planning & Zoning Commission,* 220 Conn. 913, 597 A.2d 332 (1991). As an alternate ground on which to affirm the judgment of the Appellate Court; see Practice Book § 4013 (4); the plaintiff argues that the Farmington special permit regulations do not contain ascertainable standards for the regulation of the plaintiff's application, but instead merely reiterate the general policy statements contained within the General Statutes. We conclude that the commission properly referred to and applied the zoning regulations governing special permits when reviewing the plaintiff's application for approval of a revised site plan. Moreover, we conclude that the plaintiff has not met

its burden of proving that the conditions of the special permit regulations do not contain known and fixed standards for the regulation of such applications.

## I

Essentially, the present appeal concerns whether a site plan approved as part of an application for a special permit to construct elderly housing may be subsequently revised without conforming to such special permit regulations. The commission argues that, because the site plan is an integral part of the elderly housing special permit application process, any subsequent revision to the site plan must also comply with the special permit regulations. The plaintiff argues that review of the application for a revised site plan is confined to the regulations governing site plans because, once the special permit is granted, elderly housing is a permitted use on that site. Therefore, according to the plaintiff, the commission may deny the application for the site plan only if it fails to comply with the regulations governing site plans. We agree with the commission.

A specially permitted use enjoys a unique status in a town's planning and zoning scheme because it generally is not restricted to a particular zoning district. "The basic rationale for the special permit [is] . . . that while certain [specially permitted] land uses may be generally compatible with the uses permitted as of right in particular zoning districts, their nature is such that their precise location and mode of operation must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site. Common specially permitted uses, for example, are hospitals, churches and schools in residential zones. These uses are not as intrusive as commercial uses would be, yet they do generate parking and traffic problems that, if not properly planned for, might undermine the residential char-

acter of the neighborhood. If authorized only upon the granting of a special permit which may be issued after the [zoning] board is satisfied that parking and traffic problems have been satisfactorily worked out, land usage in the community can be more flexibly arranged than if schools, churches and similar uses had to be allowed anywhere within a particular zoning district, or not at all." T. Tondro, Connecticut Land Use Regulation p. 78.

Accordingly, before the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood. The commission, therefore, must be allowed to examine the suggested proposal closely. The details of the proposal are laid out in the site plan, which "is a physical plan showing the layout and the design of the site of a proposed use . . . . It generally should indicate the proposed location of all structures, parking areas and open spaces on the plot and their relation to adjacent roadways and uses." (Internal quotation marks omitted.) *SSM Associates Limited Partnership* v. *Plan & Zoning Commission*, 15 Conn. App. 561, 567, 545 A.2d 602 (1988), aff'd, 211 Conn. 331, 559 A.2d 196 (1989). As used in General Statutes § 8-3 (g),[5] a site plan is "a gen-

---

[5] General Statutes § 8-3 (g) provides in relevant part: "The zoning regulations may require that a site plan be filed with the commission or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations. . . . A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning . . . regulations. Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. . . . A decision to deny or modify a site plan shall set forth the reasons for such denial or modification. A copy of any decision shall be sent by certified mail to the person who submitted such plan within fifteen days after such decision is rendered. The zoning commission may, as a condition of approval of any modified site plan, require a bond in an amount and with surety and condi-

eral term which is used in a functional sense to denote a plan for the proposed use of a particular site, purporting to indicate all the information required by the regulations for that use." Id., 566.

When considering an application for a special permit, the commission is called upon to make a decision as to whether a *particular* application for elderly housing would be compatible with the *particular zoning district,* under the circumstances then existing. That determination can only be made after a thorough examination of the specific site plan submitted. As in *SSM Associates Limited Partnership* v. *Plan & Zoning Commission,* 211 Conn. 331, 334, 559 A.2d 196 (1989), the Farmington zoning regulations render site plans "inseparable from and part and parcel of [the related] special permit application." As such, review of a special permit application is necessarily dependent on a thorough review of the proposed site plan because, in fact, the grant of the special permit is usually contingent upon approval of the site plan.

Consequently, any application to revise such a site plan must be evaluated in light of the conditions set out in the special permit regulations. To conclude otherwise would not only thwart the purpose of a specially permitted use, but also the general purposes of zoning, which include the protection of the public health, safety and welfare, the regulation of the density of the population, the location and use of buildings and the limitation of development of "certain classes or kinds of buildings, structures or uses of land." General Statutes § 8-2; see also Farmington Zoning Regs., art. I.[6]

tions satisfactory to it, securing that any modifications of such site plan are made. The commission shall publish notice of the approval or denial of site plans in a newspaper having a general circulation in the municipality."

[6] Article I, § 1 of the Farmington zoning regulations provides in part: "These regulations are adopted under the General Statutes of the State of Connecticut, as amended, for the following purposes:

Moreover, a contrary holding would render a zoning commission helpless if a developer first obtained a special permit on the basis of a site plan that was particularly well suited to the neighborhood, but then decided to substitute for that site plan one that eradicated the very features that motivated the commission to grant the special permit. By allowing the commission to take into account all special permit zoning regulations when a developer seeks a revision to its site plan, the commission can further the purposes of a town's zoning regulations.[7]

"To promote and to protect the public health, safety, and welfare of the inhabitants of Farmington, Connecticut, and of the public generally;

"To facilitate adequate transportation, water, sewerage, schools, parts, and other public benefits;

"To encourage the most appropriate use of land throughout the Town, thereby conserving the value of properties;

"To regulate the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts, and other open spaces; and the height, size and location of advertising signs;

"To regulate the density of population and the location and use of buildings, structures, and land for trade, industry, residence, or other purposes . . .

"To regulate the erection, construction, reconstruction, alteration, or use of buildings or structures and the use of land in such zones;

"*To permit certain classes or kinds of buildings, structures or uses of land within the Town only after obtaining a special permit or special exception;*

"To lessen congestion in the streets;

"To secure safety from fire, panic, flood, and other dangers;

"To provide adequate light and air;

"To prevent the overcrowding of land;

"To further the policies of the Plan of Development;

"To guide development in a manner which recognizes the importance of the natural environment;

"To guide development which minimizes impacts to wetlands, watercourses, flood prone areas, hillsides, surface water and groundwater resources, and other sensitive and significant features of the natural landscape . . . ." (Emphasis added.)

[7] Although minor alterations to a site plan designed for a specially permitted use should not result in disapproval of the application, we agree with the commission that the determination of what constitutes a "minor alteration" is best left to the commission. See *Schwartz* v. *Planning & Zoning Commission,* 208 Conn. 146, 152, 543 A.2d 1339 (1988).

Moreover article II, § 5d.4 (a) of the Farmington zoning regulations of 1978 provides, in part, that "no development [pursuant to a special permit] shall be permitted except in conformity with the approved plan." To allow the plaintiff to change the site plan substantially, without also allowing the commission to consider the conditions of the special permit regulations when evaluating the new site plan application, would be contrary to the express language of the regulations that provided that the site be developed "in conformity with" the approved site plan.

Lastly, the plaintiff argues that the commission is precluded from considering the special permit regulations because of our holding in *TLC Development, Inc.* v. *Planning & Zoning Commission,* 215 Conn. 527, 577 A.2d 288 (1990) (*TLC*). In *TLC*, we held that, pursuant to the Branford zoning regulations, off-site traffic considerations could not serve as the sole basis for the denial of a site plan application. The plaintiff argues that our holding in *TLC* controls on the facts of this case. We disagree for two reasons. First, the site plan application in *TLC* was a proposal for development in a permitted use zone. Unlike a site plan application for a permitted use where the commission has already made a determination that such a use is permitted in a particular area, elderly housing is theoretically allowed in any zone provided that the proposed site plan meets the standards and regulations set forth in the regulations. When the commission reviews such a special permit application, it must, therefore, determine whether the particular proposal is suitable for the particular zone. Second, in *Friedman* v. *Planning & Zoning Commission,* 222 Conn. 262, 266, 608 A.2d 1178 (1992), we clarified our holding in *TLC* and stated that, in a permitted use zone, although a presumption arises that the permitted use does *not* adversely affect traffic within the zone, "an examination into special traf-

fic consequences of a given site [is permissible] when the applicable zoning regulations permit it." Accordingly, our holding in *TLC* is not dispositive of the issue in the present appeal.

In this case, the commission denied the plaintiff's application for a revised site plan because: "Members felt that this revision was not in keeping with the scale of adjacent homes; that the development of the western portion of the parcel was too intense; and [that] the proposed driveway from Tunxis Street was located too close to the adjacent property. It was further recommended that the project be divided into two buildings and that the two proposed lots along Tunxis Street be combined into one." The trial court concluded that the commission was correct in considering article IV of the Farmington zoning regulations, which regulates special permits in general, and article II, § 9, which specifically governs special permits for elderly housing. The trial court then "found that the record did not support two of the commission's stated reasons for the denial of the site plan application, in that 'the scale of the adjacent homes' and the 'intensity of the development' were not criteria found within the Farmington regulations governing site plan approval [pursuant to a special permit].[8] The court, did, however, find that the commission's third stated reason for denying the application, namely, that the proposed driveway was located too close to the adjacent property, was a proper consideration under the regulations and was supported by the record. In its postjudgment articulation, the trial court indicated that the proposed driveway entrance violated article IV, § 12 (B) (2) and (3) of the town's

---

[8] Neither the plaintiff nor the commission argues on appeal that the trial court improperly found that the Farmington zoning regulations do not allow for two of the three reasons given by the commission in denying the plaintiff's application for a revised site plan. Accordingly, this is not an issue before this court.

regulations";[9] *Barberino Realty & Development Corporation* v. *Planning & Zoning Commission,* supra, 25 Conn. App. 395–96; that is, the conditions protecting adjacent property from detriment, and requiring that the location of traffic circulation be adequate within the site. Because we hold that the commission properly considered the special permit regulations when it denied the plaintiff's application for a revised site plan and because the trial court found sufficient support for one of the commission's reasons denying the application, we reverse the judgment of the Appellate Court.

## II

As an alternate ground upon which to affirm the judgment of the Appellate Court, the plaintiff claims that, even if the commission was authorized to consider the applicable regulations governing specially permitted uses, those regulations were void because they did not contain ascertainable standards for review in approving or denying the plaintiff's application. In support of its position, the plaintiff relies, in part, on *Ghent* v. *Planning Commission,* 219 Conn. 511, 518, 594 A.2d 5 (1991), in which we held that a commission's regulations must be reasonably precise in the subject matter and reasonably adequate and sufficient to give both the commission and those affected by its decision notice of their rights and obligations. The plaintiff further relies on *Sonn* v. *Planning Commission,* 172 Conn. 156, 162, 374 A.2d 159 (1976), wherein we stated that "[v]ague regulations which contain meaningless stan-

---

[9] Article IV, § 12 of the Farmington zoning regulations, as amended to March 23, 1987, provides in pertinent part: "SPECIAL PERMITS, INTENT AND APPLICATION REQUIREMENTS . . . .

"B. Standards for Granting of a Change of Zone or Special Permit . . .

"2. That adequate safeguards have been taken to protect adjacent property and the neighborhood in general from detriment;

"3. That traffic circulation within the site and the amount, location, and access to parking is adequate . . . ."

dards lead to ambiguous interpretations in determining the approval or disapproval of different subdivisions. Adequate, fixed, and sufficient standards of guidance for the commission must be delineated in its regulations so as to avoid decisions, affecting the right of property owners, which would otherwise be a purely arbitrary choice of the commission; such a delegation of arbitrary power is invalid."

Although the plaintiff does not specify which regulation it claims to be impermissibly vague, it appears that the plaintiff is referring to article IV, § 12 (B) (2) and (3), the regulations upon which the trial court sustained the decision of the commission. Those regulations require that the commission take "adequate safeguards" for the protection of other properties and provide for "adequate" traffic circulation and parking.

The Appellate Court agreed with the plaintiff and stated: "Our Supreme Court has held that regulations that contain only 'broad legislative statement[s] of purpose comparable to that found in § 8-2 of the General Statutes'; *Kosinski* v. *Lawlor,* 177 Conn. 420, 423, 418 A.2d 66 (1979); provide no standards for review in approving or denying site plans, and as such may be used 'only in conjunction with and not as an alternative to the standards contained in the applicable zoning regulations.' Id." *Barberino Realty & Development Corporation* v. *Planning & Zoning Commission,* supra, 25 Conn. App. 400. The Appellate Court concluded that "[t]he regulations that are the basis of the trial court's decision, article IV, § 12 (B) (2) and (3), contain the same infirmity" because they "provide no ascertainable standards for the regulation of the plaintiff's application, and indeed specific regulatory standards are found elsewhere in the zoning regulations and are complied with." Id. We disagree with the Appellate Court.

We have held that the burden of showing that regulations are unconstitutionally vague rests with the plaintiff. *Russo* v. *East Hartford,* 179 Conn. 250, 257, 425 A.2d 1282 (1979), cert. denied, 445 U.S. 940, 100 S. Ct. 1334, 63 L. Ed. 2d 773 (1980); see also *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973). Moreover, the plaintiff is required to show that the regulation complained of is impermissibly vague as applied to the facts of the particular case. *Bombero* v. *Planning & Zoning Commission,* 218 Conn. 737, 743, 591 A.2d 390 (1991); see also *Ghent* v. *Planning Commission,* supra. The plaintiff has not met these burdens in this appeal.

Although the plaintiff correctly states the law, it has not applied these legal principles to regulations governing special permits. As discussed more fully above, a specially permitted use is ordinarily allowed in any existing zoning district, provided, of course, that the site plan conforms to the regulations governing special permits. Unlike a permitted use wherein the commission has already made the determination that a particular use is appropriate in a particular area, in reviewing a special permit application the commission must examine the proposed site plan submitted with the application and determine, inter alia, whether it would be compatible with the zoning district and the existing structures permitted in that zone as of right. For example, a site plan that allows for "adequate" traffic circulation in an area zoned commercial may be wholly inadequate in an area zoned residential. The commission, therefore, must tailor its review of each site plan accompanying a special permit application to the particular zoning district in which the landowner seeks to develop. Accordingly, the commission must be afforded some leeway in the wording of the regulations.

As the trial court concluded, the commission, when reviewing the application for the revised site plan, properly considered whether the proposed driveway entrance would allow for adequate traffic circulation and would not be detrimental to the adjacent property. We agree that these concerns are valid.

The judgment of the Appellate Court is reversed, and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.