[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this appeal the plaintiff, George Mulvaney, challenges a decision by the defendant, Ridgefield Planning and Zoning Commission (hereinafter "RPZC" or "the Commission"), under General Statutes § 8-2, to deny his application for a special permit to establish a contractor's yard on Route 7 in Ridgefield, Connecticut. The plaintiff appeals pursuant to General Statutes § 8-8(b).
 I
PROCEDURAL HISTORY
On July 20, 1995, the RPZC published notice of its decision to deny the plaintiff's application. (Return of Record, Exhibit RR (hereinafter "ROR").) The plaintiff commenced this appeal within the required time period by serving the complaint and citation upon the town clerk of Ridgefield and the chairman of the Ridgefield Planning and Zoning CT Page 4332-N Committee on July 31, 1995. (Sheriff's Return dated 7/31/95.) This appeal was subsequently filed with the court on August 2, 1995.
 II
FACTS
The facts are not disputed.[1] The plaintiff is the owner of a parcel of land located at 626 Danbury Road (Route 7) in the Town of Ridgefield (hereinafter "the property"). (ROR, Exhibit A, letter of application to defendant from plaintiff of 12/29/94.) The property, which is not currently occupied, was previously used as an Exxon service station and consists of a paved parking area and a building that formerly housed the service station. Id. The property is accessible from Route 7 by either of two curb cuts, or road cuts, leading into the front of the property and is located in a B-2 Light Industry Zone. (ROR, Exhibit F, App., Map entitled "Parcel A — Topographical Map prepared for George A. Mulvaney, Ridgefield, CT," dated 8/11/94.)
On December 29, 1994, the plaintiff applied for a special permit to establish a contractor's yard on his land. (ROR, Exhibit A.) In the letter of application, the plaintiff stated that the proposed use would include a small office and equipment storage. The office and some spare parts would be placed in the existing building, with some modifications. Parts would also be kept in a varying number of the plaintiff's four trailers (approximately 40 feet long) which would be parked on the premises when they were not being used at the plaintiff's work sites. The plaintiff estimated that a trailer would be moved off the property approximately once each month and that employees would enter and leave the property approximately ten times each day. The proposed use of the property was expected to be less intensive than its previous use as a service station. Id.
The Architectural Advisory Committee of the RPZC recommended approval of the design but also "recommended eliminating one curb cut . . . ." (ROR, Exhibit P, Minutes of the Architectural Advisory Committee to the Ridgefield Planning and Zoning Commission, dated 1/3/95 (hereinafter "the Committee").) The minutes of the Committee did not provide a reason for the recommendations. Id. On February 28, 1995 and April 25, 1995, the RPZC held public hearings on the plaintiff's application. (ROR, Exhibit L, Certification of Publication of Legal Notice for 2/28/95 meeting; ROR, Exhibit Y, Certification of Publication of Legal Notice for 4/25/95 meeting.) There was no public opposition to the application. During the hearings, the RPZC raised the Committee's recommendations, and the plaintiff expressed his opposition to removing CT Page 4332-O an existing curb cut on the grounds that it would be difficult to obtain permission to subsequently restore it, if necessary, and that removal could hinder the property's potential future uses. (ROR, Exhibit O, p. 30, Transcript of 2/28/95 hearing.) During both hearings, the RPZC also expressed its concern about the appearance and possibility of screening the storage trailers on the site from view. (See, e.g., ROR, Exhibit O. pp. 30,32-36, 49-52; ROR, Exhibit Z, pp. 71-78, 82, Transcript of 4/25/95 hearing.) On June 27, 1995, the plaintiff sent a letter to the RPZC renewing his opposition to removing a curb cut but offering to block one of the entrances with plantings as indicated on a site plan dated June 24, 1995 accompanying the letter. (ROR, Exhibit HH; ROR, Exhibit KK.)
Subsequently, on July 11, 1995, the Commission unanimously voted to deny the plaintiff's application and adopted a final resolution of denial with the following reasons:
 1. In the Commission's judgment, the location, size and intensity of the proposed use and the absence of adequate screening from roadside view would not be in harmony with the character of the area nor the appropriate and orderly development of the district. Reference is made to Sec. 312.0C(1).
 2. The refusal of the applicant to close one of the two existing road cuts would negatively impact traffic circulation along the busy roadway and, specially, at the intersection of Route 7 and Route 35, just to the south of the subject site. Reference is made to Sec. 312.0C(4) (5).
 3. It was the Commission's understanding from testimony at the public hearing that, except for few occasions, the trailers would be kept at the construction sites where the applicant is engaged to do work. The map submitted by the applicant dated 6/24/95 entitled "Proposed Site Plan Renovations, 626 Danbury Road" indicates an additional on-site parking area for [a] construction trailer. Given this information, the Commission feels there is a safety factor involved if large construction trailers are entering and exiting the property due to the heavy volume of traffic currently existing on Route 7.
(ROR, Exhibit NN, Adopted Resolution of Denial; ROR, Exhibit OO, CT Page 4332-P Minutes of 7/11/95 meeting.)
 III
DISCUSSION
The issue in the present case is whether the RPZC improperly denied the plaintiff's application for a special permit.
As required by General Statutes § 8-8, the plaintiff has sufficiently established aggrievement. To establish aggrievement, a party must first "successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." (Citations and internal quotation marks omitted.) Winchester Woods Associates v.Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991). The record clearly establishes that the plaintiff was the owner of the property at issue and thus has a specific, injuriously affected interest in the present matter. Id.; Bossert Corporation v. Norwalk, 157 Conn. 279,285, 253 A.2d 39 (1968). Additionally, this appeal was commenced within fifteen days of notice of the defendant's decision and is, therefore, timely. General Statutes § 8-8(b).
"The burden of proof is on the plaintiff to demonstrate that the . . . [Commission] acted improperly." Spero v. Zoning Board of Appeals,217 Conn. 435, 440, 586 A.2d 590 (1991). The errors raised in the plaintiff's brief are: (1) the application conformed to zoning regulations; (2) none of the reasons for disapproval were valid; and (3) the RPZC had no authority to eliminate a curb cut. All other errors raised in the complaint but not briefed are deemed abandoned. Protect Hamden/North Haven fromExcessive Traffic Pollution, Inc. v. Planning Zoning Commission,220 Conn. 527, 536 n. 8, 600 A.2d 757 (1991). As all three claims are related, they should be considered together.
 A
STANDARDS FOR JUDICIAL REVIEW
The scope of judicial review in a zoning appeal "depends on whether the zoning commission has acted in its `legislative' or `administrative' capacity." Kaufman v. Zoning Commission, 232 Conn. 122, 150,653 A.2d 798 (1995) (distinguishing standards of review for legislative and CT Page 4332-Q administrative capacities). Where the zoning commission acts in an administrative capacity, "[j]udicial review . . . requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." Schallenkamp v.DelPonte, 229 Conn. 31, 40, 639 A.2d 1018 (1994); Kaufman v. ZoningCommission, supra, 232 Conn. 151. "In appeals from administrative zoning decisions, by contrast [with legislative actions], the decisions will be invalidated even if they were reasonably supported by the record, if they were not supported by `substantial' evidence in that record." Kaufman v.Zoning Commission, supra, 232 Conn. 151, citing Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 540, 525 A.2d 940 (1987). The difference arises from the board's quasi-judicial function when acting as an administrator. Id., 150. In fulfilling its administrative function, the commission need only ascertain compliance with the zoning regulations and statutes. Id. Its central focus is "the correct application of law to facts in the particular case." Id., 151. Where a zoning commission gives more than one reason for its decision, "[t]he action of the commission should be sustained if . . . [any] of the stated reasons is sufficient to support it . . . . The evidence, however, to support any such reason must be substantial . . . ." (Citations omitted.) DeBeradinis v. Zoning Commission,228 Conn. 187, 199, 635 A.2d 1220 (1994).
 B
SPECIAL PERMITS
A zoning commission acts in an administrative capacity when reviewing an application for a special permit. Felsman v. ZoningCommission, 31 Conn. App. 674, 681, 626 A.2d 825 (1993), citing Sheridanv. Planning Board, 159 Conn. 1, 16, 266 A.2d 396 (1970). "`The basic rationale for the special permit . . . is that while certain land uses may be generally compatible with the uses permitted as of right in a particular zoning district, their nature is such that their precise location and mode of operation must be individually regulated because of the particular topography, traffic problems, neighboring uses . . . [and other aspects] of the site.'" Whisper Wind Development Corporation v. Planning Zoning Commission, 32 Conn. App. 515, 519, 630 A.2d 108 (1993), aff'd229 Conn. 176, 640 A.2d 100 (1994), quoting T. Tondro, Connecticut Land Use Regulation 175 (2d Ed., 1992). "[A] special permit application may be denied on the basis of the general considerations alone." Id., 520-21.
A zoning commission's duty when considering a special permit application is to determine whether (1) the zoning regulations expressly permit the proposed use of the property; (2) the standards in the relevant CT Page 4332-R zoning regulations are satisfied; and (3) the use will satisfy the "conditions necessary to protect the public health, safety, convenience and property values," as required by General Statutes § 8-2. HousatonicTerminal Corporation v. Planning Zoning Board, 168 Conn. 304, 307,362 A.2d 1375 (1975). If a special permit application conforms to the standards in the statutes and the agency's existing regulations, the zoning commission must approve it. A.P. W. Holding Corporation v.Planning Zoning Board, 167 Conn. 182, 185, 355 A.2d 91 (1974); General Statutes § 8-2.
Facts supporting the agency's decision may include evidence presented at hearings as well as knowledge acquired by commission members through personal observation of the site, or through personal knowledge of the area involved in the application. OakwoodDevelopment Corporation v. Zoning Board of Appeals, 20 Conn. App. 458,460, 567 A.2d 1260, cert. denied, 215 Conn. 808, 576 A.2d 538
(1990).
The defendant provided three reasons for denying the plaintiff's application. Should any of these reasons be sufficient, the appeal will be denied and the defendant's action sustained. DeBeradinis v. ZoningCommission, supra, 228 Conn. 199.
 C
FIRST REASON FOR DENIAL
Section 412.0 of the Ridgefield Zoning Regulations governs the B-2 Zone. Section 412.0B(6) provides that, upon obtaining a special permit from the RPZC, a contractor's yard may be established on a minimum of one acre of land. In addition to the B-2 Zone requirements and other general Ridgefield zoning requirements, all special permits are subject to the requirements of § 312.02C which the RPZC must consider.[2]
The defendant's first reason for denial is:
 1. In the Commission's judgment, the location, size and intensity of the proposed use and the absence of adequate screening from roadside view would not be in harmony with the character of the area nor the appropriate and orderly development of the district. Reference is made to Sec. 312.0C(1).
This reason states four grounds for denial: location, size, intensity and screening. The plaintiff argues that because the regulations expressly CT Page 4332-S permit contractors' yards in a B-2 Zone with a special permit there is a "conclusive presumption" that the use will not adversely affect the area and that the commission may not further inquire into effects on the general harmony of the area. As previously indicated, however, the granting of a special permit is subject to individualized application of the zoning regulations. Whisper Wind Development Corporation v. Planning Zoning Commission, supra, 32 Conn. App. 519. A zoning commission may deny a permit application based on general considerations such as those found in § 312.0C(1) and those indicated in paragraph one of the defendant's decision. Id., 520. The commission's decision will be upheld if there is substantial evidence in the record to support it. Kaufman v.Zoning Commission, supra, 232 Conn. 151.
The defendant held two hearings on the plaintiff's application. The issue of size was only raised at the first hearing when the plaintiff's counsel mentioned that the property is over one acre in size, thus fulfilling the § 412.0B(6) size requirement for establishing a contractor's yard. (ROR Exhibit O, p. 23.) Similarly, the only discussion of the intensity of the proposed use indicated that the plaintiff expected no more than ten to twelve vehicle trips each day. Id. Because of this dearth of evidence, there is insubstantial evidence in the record to support the defendant's finding that the proposed use was of an inappropriate size or intensity.
The location of the property, repeatedly described as being at "the entrance to Ridgefield" (ROR, Exhibit O, p. 30; ROR, Exhibit Z, p. 77), and the adequacy of the proposed screening were examined more thoroughly during the hearings. (See, e.g., ROR, Exhibit O, pp. 32, 36, 42.) "Location" is one of the required considerations pursuant to § 312.0C(1), to which the defendant's decision makes reference. The section, however, does not include any reference to screening. The defendant's authority to regulate based on screening is found through B-2 Zone § 412.0I, which refers to § 326.0, which in turn details a number of specific landscaping and screening requirements. Specifically, § 326.0J states that "[t]he Commission shall retain the right to require additional screening . . . as deemed necessary."
Based on § 312.02C(1), 326.0, and the evidence in the record, the defendant could reasonably conclude that the location and screening would not be appropriate. The record establishes that the plaintiff's trailers would be larger than the existing building (ROR, Exhibit O, pp. 42-43), and that the trailers could only be parked in certain positions on the property (ROR, Exhibit O, p. 33), thus rendering them visible from the road (ROR, Exhibit O, p. 34; ROR, Exhibit Z, pp. 73-74). Furthermore, the hearing extensively discussed numerous options for screening the CT Page 4332-T trailers in order to mitigate their appearance. The evidence in the record is sufficiently substantial to support the defendant's determination as to the location and screening. This court cannot substitute its judgment for that of the Commission as long as the Commission's decision reflects the reasonable exercise of honest judgment. Oakwood DevelopmentCorporation v. Zoning Board of Appeals, supra, 20 Conn. App., 460.
 D
SECOND REASON FOR DENIAL
The defendant's second reason for denial is:
 2. The refusal of the applicant to close one of the two existing road cuts would negatively impact traffic circulation along the busy roadway and, specially, at the intersection of Route 7 and Route 35, just to the south of the subject site. Reference is made to Sec. 312.0C(4) (5).
"It is well settled that the conditions permitting the use of property as a special exception must be found in the zoning regulations themselves; that the commission must have the authority in granting a special exception to subject the grant only to those conditions which are found in the regulations . . . ." Beckish v. Planning Zoning Commission, 162 Conn. 11,14, 291 A.2d 208 (1971). Any conditions imposed upon an application without basis in the zoning regulations are void. Id., 15. In Beckish, the Columbia Planning and Zoning Commission voted to approve a special permit application with the condition that the applicant remove an existing sign on the property. Id., 13. Upon review, the Supreme Court ruled the condition void holding that "[t]here is nothing in the zoning regulations . . . which gives the defendant commission any authority to require the discontinuance of a preexisting use of undisputed legality . . . ." Id., 15. In the present case, there is no dispute that the two curb cuts located on the property are legally present. Additionally, the zoning regulations neither contain a provision authorizing the Commission to require an applicant to remove a curb cut nor do the regulations prohibit a property from having more than one curb cut.[3]
The defendant's brief relies on Barberino Realty DevelopmentCorp. v. Planning Zoning Commission, 222 Conn. 607, 621,610 A.2d 1205 (1992) for the proposition that the defendant may deny a special permit application based on the location of a "proposed driveway entrance." That proposition, however, only serves to highlight the reason the defendant may not require the plaintiff to remove his curb cut. The entrance at issue is not "proposed." It already exists. The defendant's CT Page 4332-U repeated references to the "undesirability" and "superfluous" nature of the curb cut are not relevant because the Ridgefield zoning regulations do not give the RPZC authority to require removal of a preexisting curb cut.
 E
THIRD REASON FOR DENIAL
The defendant's third reason for denial is:
 3. It was the Commission's understanding from testimony at the public hearing that, except for few occasions, the trailers would be kept at the construction sites where the applicant is engaged to do work. The map submitted by the applicant dated 6/24/95 entitled "Proposed Site Plan Renovations, 626 Danbury Road" indicates an additional on-site parking area for [a] construction trailer. Given this information, the Commission feels there is a safety factor involved if large construction trailers are entering and exiting the property due to the heavy volume of traffic currently existing on Route 7.
The defendant's third reason for denial indicates that the Commission felt public safety could be at risk from the plaintiff's trailers as they enter and exit the property.[4] Section 412.0B(6) expressly states that contractors' yards approved for a special permit may include the "parking of motor vehicles and equipment." Additionally, the zoning regulations also require the defendant to consider public safety among the general considerations set forth in § 312.02C. The evidence in the record indicates that the plaintiff would, at times, have trailers driven onto and off of the property. (ROR, Exhibit A.) The defendant could reasonably conclude from the evidence in the record that this would constitute a safety problem, and could properly deny the application on that basis.
Where at least one of the defendant's stated reasons for denial is adequate, their decision must be sustained. DeBeradinis v. ZoningCommission, supra, 228 Conn. 199. The defendant's reasons regarding location, screening and public safety are adequate. Therefore, the defendant's denial of the plaintiff's special permit application must be and is hereby affirmed.
Plaintiff's appeal is dismissed.
Mihalakos, J. CT Page 4332-V