MUNICIPAL FUNDING, LLC *v.* ZONING BOARD OF
APPEALS OF THE CITY OF WATERBURY ET AL.
(SC 16934)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued January 8—officially released, August 3, 2004

*Elaine M. Skoronski*, for the appellants (defendants).

*Franklin G. Pilicy*, for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this appeal is whether the Appellate Court, in reversing the judgment of the trial court, improperly substituted its judgment for the judgment of the named defendant, the zoning board of appeals of the city of Waterbury (board), which had denied an application for a special exception filed by the plaintiff, Municipal Funding, LLC. See *Municipal Funding, LLC* v. *Zoning Board of Appeals*, 74 Conn. App. 155, 165, 810 A.2d 312 (2002). The defendants[1] claim that the Appellate Court improperly substituted its judgment for the judgment of the board, because there was substantial evidence in the record supporting the board's decision to deny the application. We agree with the defendants, and, accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court's opinion sets forth the following relevant facts and procedural history. "The plaintiff owns real property at 300 Schraffts Drive [in Waterbury], which is in the R.M. moderate density residence district (R.M.) and C.A. commercial artery district (C.A.) as defined by the Waterbury zoning regulations (regula-

---

[1] Joseph Caizzo, the board's chairman, and Cassandra McDaniel Pender, the Waterbury city clerk, also were named as defendants. References herein to the defendants are to all three parties.

tions). The plaintiff filed an application to the board for a special exception to open a convalescent, rest or nursing home on the property pursuant to § 5.13-13 of the regulations.[2] Specifically, in its application, the plaintiff proposed to utilize the property as a long-term, drug free residential treatment facility for adolescents and young adults with substance abuse problems [(proposed facility)]. The proposed facility would be operated by the APT Foundation (foundation), an affiliate of the Yale School of Medicine, and licensed by the department of public health and the department of children and families.

"A public hearing on the plaintiff's application ensued. At the hearing, the following evidence was adduced. The foundation intended to utilize the [proposed] facility as a long-term, drug free residential treatment facility providing educational, vocational and clinical services to approximately 125 adolescents and young adults with severe substance abuse or dependence problems. Most residents of the facility would be referred to the foundation by various state agencies, school systems and the department of correction and generally would remain in the program [for] six months to two years.

"During the hearing, Allen Brown, the chief executive officer of the foundation, and Samuel Ball, the foundation's director of residential services and an associate professor of psychiatry at Yale Medical School, spoke on behalf of granting the special exception. Brown testified that the foundation, a nonprofit organization that is an affiliate of the Yale School of Medicine, has been in existence since 1968 and has operated [an] identical

[2] Section 5.13-13 of the Waterbury zoning regulations provides in relevant part: "Convalescent homes, rest homes, and nursing homes may be a permitted use in the R.M., R.H. [high density residence] and C.A. districts, subject to a public hearing, approval of a special exception by the [board] and [certain] conditions . . . ."

program in Newtown for the past fifteen years. Brown stated that the program in Newtown has been very successful . . . but due to the state's acquisition of the property, the foundation was forced to find a new location in which to operate the [program]." Id., 156–58.

"The residents would not be permitted to have automobiles, and, although the [proposed] facility would not be locked, the residents would not be permitted to leave the premises freely. Brown further stated that in the thirty years of operating similar programs, rarely has a resident ever left [a] facility, but that the few who have wandered away simply return to their respective homes. With respect to the security of the facility, Brown stated that the staff monitors all movement within the building, but the foundation does not employ a special security force. In the thirty years that the foundation has operated similar programs, it has had very few problems with neighbors. The foundation also will not accept violent offenders or sex offenders into its program. . . . Ball explained that the proposed facility would house fifty staff members, comprised of two physicians, two clinical psychologists, four social workers, four social workers with master's degrees, four nurses, a vocational counselor and various residential counselors." Id., 158.

"[Brown] further stated that 'addiction is a medical infirmity . . . equivalent to having diabetes or hypertension or heart disease.' [Residents must remain drug free in order to continue participation in the program, and they] would be subjected to random drug tests and . . . be discharged immediately from the program if the result is positive. . . . Ball added that 'addiction is a physical disorder . . . because the brain is altered as a function of [drug abuse] . . . and that does not go away immediately with the cessation of drugs or alcohol use . . . .' " Id.

The record reveals the following additional facts. The proposed facility would use an intense approach in treating residents, including behavioral confrontation and group therapy. The program would be the next option for addicts who had not been successful in less intense outpatient drug treatment programs. Approximately 30 percent of the participants in the program would be likely to leave within the first thirty days. Although the facility would employ a total of fifty staff members, approximately twenty of them would be on duty at any given time.

"Opponents to the granting of the special exception also spoke at the public hearing. Several residents, who live in neighborhoods near the proposed facility, expressed their concerns about neighborhood safety, particularly because many people often walk at night. Another person, who owns a business in the vicinity, stated that he feared that the opening of a drug treatment facility would decrease the property rental values in the area. After hearing all of the testimony, the board unanimously voted, with one abstention, to deny the plaintiff's application." Id., 159.

The plaintiff subsequently appealed from the board's decision to the trial court pursuant to General Statutes § 8-8 (b).[3] The trial court dismissed the plaintiff's appeal, finding that the board's decision was supported by sufficient evidence that the proposed facility would pose a threat to the public safety of the surrounding neighbor-

[3] General Statutes § 8-8 (b) provides in relevant part that "any person aggrieved by any decision of a board, including a decision to approve or deny a site plan pursuant to subsection (g) of section 8-3, may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (f) and (g) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."

hood, and as a result, the board's decision to deny the plaintiff's application was not arbitrary or an abuse of discretion.[4]

The plaintiff then appealed from the judgment of the trial court to the Appellate Court,[5] contending that the board's decision was not supported by substantial evidence in the record. Id. The Appellate Court reversed the judgment of the trial court, concluding that there was not sufficient evidence in the record that the proposed facility would pose a threat to public safety and, therefore, the board improperly had denied the special exception application. Id., 155. Thereafter, we granted the defendant's petition for certification to appeal, limited to the following question: "Whether the Appellate Court, in reversing the judgment of the trial court, properly substituted its judgment for the judgment of the [board] in reversing the board's decision denying the plaintiff's special permit application." *Municipal Funding, LLC* v. *Zoning Board of Appeals*, 262 Conn. 945, 815 A.2d 675 (2003).

On appeal to this court, the defendants contend that there is substantial evidence in the record to support the board's denial of the plaintiff's application for a special exception[6] based on significant public safety concerns resulting from the proposed facility. As a result, the defendants claim, the Appellate Court, in reversing the judgment of the trial court upholding the board's decision, improperly substituted its judgment for that of the board. We agree.

---

[4] Because the board failed to state on the record the reasons for its decision, the trial court searched the record and found that there was substantial evidence of a concern for public safety that prompted the board's decision.

[5] The Appellate Court previously had granted the plaintiff's petition for certification to appeal from the trial court's judgment.

[6] A "special exception" is legally equivalent to a "special permit," and the two terms can be used interchangeably. *A.P. & W. Holding Corp.* v. *Planning & Zoning Board*, 167 Conn. 182, 185, 355 A.2d 91 (1974).

We begin by setting forth the applicable standard of review. In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule, according to which, "[c]onclusions reached by [a zoning] commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [commission]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [commission] supports the decision reached." (Internal quotation marks omitted.) *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 513, 636 A.2d 1342 (1994). If a trial court finds that there is substantial evidence to support a zoning board's findings, it cannot substitute its judgment for that of the board. *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 629, 711 A.2d 675 (1998). "If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Citation omitted; internal quotation marks omitted.) Id.

"We previously have observed that [a] special exception allows a property owner to use his property in a manner *expressly permitted* by the local zoning regulations. . . . Nevertheless, special exceptions, although expressly permitted by local regulations, must satisfy [certain conditions and] standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values [as required by General Statutes § 8-2]. . . . Moreover, we have noted that the nature of special exceptions is such that their precise

location and mode of operation must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site. . . . We also have recognized that, if not properly planned for, [such uses] might undermine the residential character of the neighborhood. . . . Thus, we have explained that the goal of an application for a special exception is to seek permission to vary the use of a particular piece of property from that for which it is zoned, without offending the uses permitted as of right in the particular zoning district." (Citations omitted; emphasis in original; internal quotation marks omitted.) *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission*, 267 Conn. 192, 203–204, 837 A.2d 748 (2004).

In the present case, the board failed to state on the record its reasons for denying the plaintiff's application. "Where a zoning board of appeals does not formally state the reasons for its decision . . . the trial court must search the record for a basis for the board's decision." *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 208, 658 A.2d 559 (1995). We agree with the trial court and the Appellate Court that the board denied the plaintiff's special exception application because the proposed facility posed a threat to public safety in the surrounding residential neighborhood. We must decide, therefore, whether public safety is a proper consideration in the review of a special exception application, and, if so, whether there is substantial evidence in the record supporting the board's denial of the plaintiff's application on those grounds.

"[Section] 8-2 (a) authorizes municipal zoning commissions to enact regulations providing that certain . . . uses of land are permitted only after obtaining a special permit or special exception from a zoning commission . . . . [That subsection] further provides that the obtaining [of] a special permit or special exception . . . [is] subject to standards set forth in the regu-

lations and to conditions necessary to protect the public health, safety, convenience and property values. Thus, in accordance with § 8-2 (a), an applicant's obtaining of a special exception pursuant to a zoning regulation is subject to a zoning commission's consideration of these general factors." (Internal quotation marks omitted.) *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission*, supra, 267 Conn. 205–206. The special exception process is discretionary, and the zoning board may base its denial of such an application on "general considerations such as public health, safety and welfare, which are enumerated in zoning regulations . . . ." *Irwin* v. *Planning & Zoning Commission*, supra, 244 Conn. 627.

Section 7.24 of the regulations, which are contained in the Waterbury zoning ordinance, requires the board's decisions to be "made in accordance with the Connecticut General Statutes . . . and in harmony with the purpose and intent expressed in Article I, section 1.1 [of the regulations]." Article I, § 1.1, recites the purposes of the zoning regulations. Among them is "promoting . . . the health, safety, morals and general welfare of the community" and "providing for the public health, comfort and general welfare . . . ." We conclude, therefore, that the board properly considered public safety in its review of the plaintiff's special exception application.

We further determine that the record of the proceedings before the board reveals substantial evidence that the proposed facility posed a threat to public safety in the neighborhood surrounding the facility. The plaintiff proposed to locate the facility in a residential neighborhood with a significant elderly population, a location where many residents walk late at night and early in the morning. The adolescent and young adult residents of the facility, who are referred by the department of correction and other agencies, would be engaged in an

intensive, confrontational program, from which approximately 30 percent of the participants would leave within the first thirty days. The proposed facility would not have a security force, nor would it have locks on the doors. Residents who might decide to leave the program likely would leave on foot, as they would not be permitted to keep motor vehicles at the facility. Although the facility would employ a total of fifty staff members, only approximately twenty people would be on duty during each shift to supervise up to 125 residents. Several neighbors testified during the public hearing on the matter to being fearful of the facility being located in the neighborhood and that they were concerned that it would impair the quality of life in the neighborhood. Thus, there was substantial evidence in the record to support the board's conclusion that the proposed facility posed a threat to the safety of the residents in the surrounding community, and a court cannot substitute its judgment for that of the board.[7]

Arguing that the board's decision was arbitrary and capricious rather than grounded in substantial evidence, the plaintiff compares its application to a similar, but unrelated, special exception application that previously was approved by the defendant for a different site. In addition, the plaintiff asserts that the program operator of the proposed facility successfully has operated a similar drug treatment center in a different town for thirty years without incident. This comparison to other facilities at different locations is unavailing. "The basic rationale for the special permit [is] . . . that while certain [specially permitted] land uses may be generally compatible with the uses permitted as of right

---

[7] The plaintiff argues that the board based its decision solely on the testimony of a few neighborhood residents concerning their "perception" that the proposed facility posed a nonspecific threat to their safety. Although some witnesses testified as to the residents' "perception," we nevertheless conclude that there was a sufficient factual basis in the record to support a determination that a genuine threat to public safety had been demonstrated.

in particular zoning districts, their nature is such that *their precise location and mode of operation* must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site." (Emphasis added; internal quotation marks omitted.) *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, 222 Conn. 607, 612, 610 A.2d 1205 (1992). Review of a special permit application is inherently fact-specific, requiring an examination of the particular circumstances of the precise site for which the special permit is sought and the characteristics of the specific neighborhood in which the proposed facility would be built. Id., 614. The requirement for such a fact-specific inquiry makes the board's approval of a similar facility at another site or the history of success of a similar facility in a different town legally irrelevant.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court dismissing the plaintiff's appeal.

In this opinion the other justices concurred.