******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ARTHUR OGDEN *v.* ZONING BOARD OF APPEALS
OF THE TOWN OF COLUMBIA
(AC 36516)

DiPentima, C. J., and Keller and Flynn, Js.

*Argued February 17—officially released June 9, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Hon. Lawrence C. Klaczak, judge trial referee.)

*Kenneth R. Slater, Jr.*, for the appellant (defendant).

*George C. Schober*, for the appellee (plaintiff).

*Opinion*

FLYNN, J. The defendant, the Zoning Board of Appeals of the Town of Columbia (board), appeals from the judgment of the Superior Court sustaining the appeal of the plaintiff, Arthur Odgen, from the decision of the board upholding the cease and desist order of the town's zoning enforcement officer, John Valente. On appeal, the board claims that the court erred in concluding that (1) the regulations governing construction/contractor's yards were vague and therefore unenforceable, and (2) the board's decision upholding the cease and desist order was not supported by substantial evidence. We agree and reverse the judgment of the court.

The record reveals the following facts and procedural history. On May 1, 2009, Valente issued a cease and desist order to the plaintiff, informing him that he was impermissibly using the commercial portion of his real property located at 6 Cherry Valley Road in Columbia as a construction/contractor's yard. Part of the property falls within an area zoned for commercial use, while the remainder falls within an area zoned for residential use. The cease and desist order further informed the plaintiff that he could remedy the impermissible use of the commercial portion of his property by submitting an application under Section 31 of Columbia's zoning regulations. Sections 31.1 through 31.3 of the zoning regulations provide that a permit for a construction/ contractor's yard may be issued for a commercially zoned property if an application for a special exception and a site plan are submitted by the property owner and approved by the Zoning Commission of the Town of Columbia (commission).

On June 5, 2009, the plaintiff filed an application for a special exception and site plan approval so that he could operate a construction/contractor's yard on the commercially zoned portion of his property. The plaintiff planned to use the construction/contractor's yard for "the outside storage of vehicles, equipment and trailers and a wholesale operation for the distribution of landscaping materials . . . ." The plaintiff also sought approval for "a sign to be located on the northeasterly corner of the [p]roperty, landscaping and buffering all as depicted on the [site plan]." The site plan required the plaintiff to "perform excavation, grading, stockpiling and earth removal as necessary to make the [p]roperty more suitable for the proposed uses." The commission approved the plaintiff's application and site plan on September 28, 2009, and the special exception permit for the construction/contractor's yard was recorded in the town land records.

On May 10, 2010, Valente issued a second cease and desist order to the plaintiff because the plaintiff was continuing to use his property as a construction/con-

tractor's yard without satisfying the conditions of the site plan. The order informed the plaintiff that he was continuing to impermissibly use his property as a construction/contractor's yard and that, if he wished to "legally establish this use," he must "comply with the conditions of approval" as set forth in the site plan. The plaintiff appealed the order to the board and public hearings were held on the matter on June 24 and July 22, 2010. On August 26, 2010, in a four to one vote, the board upheld the order and subsequently issued a letter to the plaintiff informing him that the order had been upheld because "the records showed that [the plaintiff] was operating a contractor's yard . . . prior to receiving a Certificate of Zoning Compliance."

In September, 2010, the plaintiff appealed the board's decision to uphold the cease and desist order to the Superior Court for the judicial district of Tolland. The plaintiff filed an amended appeal on November 14, 2011, alleging that the board's decision was "illegal, arbitrary, and an abuse of discretion" and that the board's actions amounted to an unconstitutional taking of his property. The court, *Hon. Lawrence C. Klaczak*, judge trial referee, heard the appeal on March 28, 2013. On July 16, 2013, the court issued a memorandum of decision in which it sustained the plaintiff's appeal on the grounds that the construction/contractor's yard regulations were ambiguous and that the record did not contain substantial evidence that the plaintiff was unlawfully operating a construction/contractor's yard on his property. This certified appeal followed. Additional facts will be set forth as necessary.

I

The board first claims that the court erred in concluding that the regulations governing construction/contractor's yards were vague and therefore unenforceable. Before discussing the substance of this claim, we find it necessary to address whether the board has correctly characterized the nature of the plaintiff's argument before the court and the court's holding. The plaintiff first raised the issue of vagueness in his trial brief. He began his argument by stating that "[t]he zoning regulations in this matter do not contain a definition of [construction/contractor's yard] and are therefore ambiguous." He also alleged that, during the public hearings, "[n]o legal definition or otherwise was submitted [for a construction/contractor's yard] and [Valente] and [the board] submitted their own subjective definitions. Once again, for these reasons, [the board's] decision to uphold the cease and desist [order] was unreasonable, arbitrary, illegal and an abuse of discretion."

The plaintiff then went on to argue that, if the zoning regulations were vague, they must be construed in his favor. He contended that "the definition of [construction/contractor's yard] is vague and ambiguous because

no definition exists within the zoning regulations. To hold nonexisting terms against the [plaintiff] would result in violation of [his] due process rights under both the United States and Connecticut Constitutions and would constitute a taking of [his] property rights without compensation, thereby depriving [him] of not only [his] property rights but also of the value, reasonable use and enjoyment of [his] property without due process of law. . . . Accordingly, any ambiguity should be construed against the [board]. Nevertheless, since no ambiguity exists because of the nonexisting definition of [construction/contractor's yard], the [plaintiff's] appeal must succeed." (Citation omitted.)

The court, in ruling on the plaintiff's appeal, noted that "[a]lthough the plaintiff argues that the lack of definitions for the terms 'contractor's yard' and 'construction yard' renders the regulation vague, he does not argue that the regulations are void for vagueness. Rather, he argues that 'if the zoning regulations are vague, they must be construed in [his] favor.' " The court found that the zoning regulations did not define "construction/contractor's yard" and that, accordingly, it must interpret the regulations "to ascertain the meaning of these terms." The court consulted Webster's Third New International Dictionary and discovered that, while the dictionary "does not define the phrases 'contractor's yard' or 'construction yard,' it does define the individual terms, in relevant part, as follows. 'Yard' means 'a small usu[ally] walled and often paved vacant area open to the sky and adjacent to a building . . . an area set aside for a particular business or activity . . . an assembly or storage area.' . . . 'Contractor' means: 'one that performs work . . . or provides supplies on a large scale . . . according to a contractual agreement at a price predetermined by his own calculations . . . one who contracts on predetermined terms to provide labor and materials and to be responsible for the performance of a construction job in accordance with established specifications or plans—called also *building contractor*.' . . . 'Construction' means: 'the act of putting parts together to form a complete and integrated object . . . fabrication.' " (Citations omitted; emphasis in original.)

With these definitions in mind, the court noted that, "[i]n their broadest sense, the terms 'contractor's yard' and 'construction yard' could describe most any place under the open sun where there occurs, either frequently or infrequently, 'contractor' or 'construction' activity, which could describe (1) most any kind of economic activity or (2) most any noneconomic activity related to putting things together. Nevertheless, it is clear that this is not what is meant by the regulation. Section 31 lists sixty-five other permissible uses in the commercial and manufacturing zones that are subject to site plan or special exception requirements, and many of them would be encompassed by such a defini-

tion. Thus, if the court were to construe the regulation in this broad manner, it would render these other provisions meaningless, superfluous, void or insignificant. Such a construction is impermissible if it can be at all avoided. . . . Therefore, the regulation must mean something more specific and, indeed, the members of the [board] seemed to agree that 'contractor's yard' is a term of art that means something specific, but they did not articulate any consensus on what that meaning is. At the [board's] hearings and regular meeting, its members debated what the phrase 'contractor's yard' actually means. In all of their discussions, the members of the [board] did not ever elucidate—or even agree upon—a definition of 'contractor's yard.' Rather, a majority of members simply agreed that, whatever it is that is meant by this term was happening on the [plaintiff's] parcel." (Citations omitted.)

The court concluded that, "[w]ithout additional guidance, [the regulations are] not 'reasonably precise in subject matter and reasonably adequate and sufficient' to give the [board] and the plaintiff 'notice of their rights and responsibilities' as [they] must. . . . As noted above and as evidenced by the dissent among members of the [board], the terms 'contractor's yard' and 'construction yard' in [the regulations] are ambiguous as applied to the plaintiff's actions. . . . The court is mindful that it must construe [the regulations'] 'doubtful language . . . against rather than in favor of a [restriction].' . . . As the regulation is ambiguous as applied to the plaintiff's actions and as the record does not contain substantial evidence demonstrating that the plaintiff was unlawfully operating a construction or contractor's yard, the plaintiff's appeal is sustained on this ground."

On appeal to this court, the board claims that the Superior Court improperly held that the construction/contractor's yard regulations were vague and therefore unenforceable. Essentially, the board characterizes the court's decision as a holding that the regulations were unconstitutionally vague as applied to the plaintiff. We note that it is unclear from the plaintiff's trial brief exactly what claim he was attempting to raise before the court. The crux of the plaintiff's argument seems to have been that the regulations were ambiguous and must therefore be construed in his favor. He also argued that it would be unconstitutional to "hold nonexisting terms" against him and that "no ambiguity exists because of the nonexisting definition of [construction/contractor's yard]" and therefore his appeal "must succeed." In viewing the plaintiff's trial brief as a whole, it seems evident that the plaintiff was not attempting to argue that the board incorrectly interpreted the construction/contractor's yard regulations and determined that they applied to him. Rather, the plaintiff appears to have argued that the board could not interpret the regulations in any way that would be correct because

the regulations did not contain a definition for "construction/contractor's yard." In other words, the plaintiff's argument before the court was that the absence of a definition for construction/contractor's yard rendered the regulations vague and therefore they could not be enforced, or "held," against him.

We also note that the plaintiff does not challenge the board's characterization of the court's holding in his appellate brief. Rather, the plaintiff argues that the court did not err when it ruled that the regulations governing construction/contractor's yards were invalid and unenforceable. The plaintiff briefs the issue as a vagueness claim and cites to case law on the void for vagueness doctrine. In light of the plaintiff's arguments in his trial brief and appellate brief, and the court's holding that the regulations were ambiguous "as applied" to the plaintiff and therefore could not be enforced against him, we conclude that the plaintiff raised, and the court ruled on, a claim that the regulations were unconstitutionally vague as applied to him.

Having concluded that the board correctly characterized the court's decision as a holding that the construction/contractor's yard regulations were unconstitutionally vague as applied to the plaintiff, we now address the substance of the board's claim. The board argues that the court improperly considered whether the regulations were vague because the plaintiff did not raise the issue before the board during the public hearings or in the complaint for his administrative appeal. The board also argues that, if the court properly considered the issue, it improperly concluded that the regulations were vague. The plaintiff argues that the court properly considered his vagueness claim because he raised it in his trial brief and the claim is of constitutional magnitude. He also argues that the court properly concluded that the regulations were vague. We agree with the board that the court improperly concluded that the construction/contractor's yard regulations were unconstitutionally vague as applied to the plaintiff.

A

We must first determine whether the plaintiff's claim that the construction/contractor's yard regulations were unconstitutionally vague as applied to him was properly before the court. Our Supreme Court has previously held that "[a] party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that were not asserted before the board. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." (Internal quotation marks omitted.) *Dragan* v. *Connecticut Medical Examining Board*, 223 Conn. 618, 632, 613 A.2d 739 (1992); see also *Finkenstein* v. *Administrator, Unemployment*

*Compensation Act*, 192 Conn. 104, 112–14, 470 A.2d 1196 (1984) (declining to review claim that was not properly raised before board of review). Furthermore, "[t]o allow a court to set aside an agency's determination upon a ground not theretofore presented . . . deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." (Internal quotation marks omitted.) *Burnham* v. *Administrator, Unemployment Compensation Act*, 184 Conn. 317, 323, 439 A.2d 1008 (1981).

The plaintiff argues, however, that, even though he did not raise his vagueness claim before the board, it was properly before the court because it was of constitutional magnitude. We agree. The "well-recognized limitations on judicial review do not require courts to abstain entirely from entertaining questions that might have been, but were not, raised before the administrative tribunal. Reviewing courts retain considerable latitude, in ordinary legal proceedings, to consider matters not raised in the trial court. . . . The standard for review of administrative proceedings similarly must allow for judicial scrutiny of claims such as constitutional error . . . jurisdictional error . . . or error in the construction of the administrative agency's authorizing statute." (Citations omitted.) Id., 322.

It would be pointless for us to require the plaintiff to bring his constitutional claim before the board, as it is a "well established common-law principle that administrative agencies lack the authority to determine constitutional questions." *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 64, 808 A.2d 1107 (2002); see also *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 570, 821 A.2d 725 (2003) (noting that party's failure to exhaust administrative remedies will be excused if claim alleges constitutional violation and administrative agency lacks authority to grant adequate relief). Nor is the plaintiff required to challenge the validity of the construction/contractor's yard regulation in a separate declaratory judgment action. See *Bombero* v. *Planning & Zoning Commission*, 218 Conn. 737, 745 n.10, 591 A.2d 390 (1991) ("a landowner faced with a cease and desist order based on an invalid regulation should be permitted to raise its invalidity in the course of his appeal from the cease and desist order"). We conclude that the plaintiff's claim that the construction/contractor's yard regulations were unconstitutionally vague as applied to him was properly before the court.

The board also argues that the plaintiff's vagueness claim was not properly before the court because the plaintiff did not include the claim in his appeal. In its memorandum of decision, the court acknowledged that the appeal did not contain a vagueness claim. The court reasoned that it could nevertheless address the claim because the plaintiff had raised it in his trial brief and it had a "genesis in the appeal." We do not condone

the practice of raising claims for the first time in a trial brief. It is well established in our case law that "a pleading must provide adequate notice of the facts claimed and the issues to be tried. . . . Whether a [pleading] gives sufficient notice is determined in each case with reference to the character of the wrong complained of and the underlying purpose of the rule which is to prevent surprise upon the defendant." (Internal quotation marks omitted.) *Tedesco* v. *Stamford*, 215 Conn. 450, 459, 576 A.2d 1273 (1990). However, "[o]ur rules of practice are designed to have all formal and technical objections made known as early as practicable, so that the plaintiff may amend or proceed anew, and the parties may, as expeditiously and inexpensively as possible, reach and settle their controversy upon its merits. . . . The appeal process should not be utilized to seek to correct pleading deficiencies the party complaining clearly could have remedied under our rules in the trial court." (Citation omitted; internal quotation marks omitted.) Id., 457–58.

The plaintiff's trial brief put the board on notice that the plaintiff intended to raise claims at trial that were not included in the appeal.[1] The board had the opportunity to respond to the plaintiff's additional claims in its own trial brief but did not do so. There is no indication in the record before us that the board objected to the plaintiff's actions in raising a claim in his trial brief that was not reflected in the appeal. If the board had objected, then the plaintiff could have attempted to amend his appeal and properly place his vagueness claim before the court pursuant to Practice Book § 10-60 (a).[2] We decline to reverse the judgment of the Superior Court on grounds that were known to the board at the time of trial and that it could have addressed, but chose not to, at that time.

### B

We now turn to the question of whether the court properly concluded that the construction/contractor's yard regulations were vague and therefore unenforceable. The crux of the plaintiff's argument is that the regulations are unconstitutionally vague as applied to him because they do not define a construction/contractor's yard and, as a result, he lacked adequate notice that the regulations applied to his use of his property. He also argues that the vagueness of the regulations allowed Valente and the commission to arbitrarily enforce them against him.[3]

"As a threshold matter, it is necessary to discuss the applicable standard of review. A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity." (Internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 672, 894 A.2d 285 (2006). "The party challenging a statute's constitutionality has a heavy burden of proof; the unconsti-

tutionality must be proven beyond all reasonable doubt. . . . Additionally, in a vagueness challenge, such as this, civil statutes can be less specific than criminal statutes and still pass constitutional muster. . . . To prove that a statute is unconstitutionally vague, the challenging party must establish that an ordinary person is not able to know what conduct is permitted and prohibited under the statute." (Citations omitted.) *Bottone* v. *Westport*, 209 Conn. 652, 657–58, 553 A.2d 576 (1989).

"To demonstrate that [a statute] is unconstitutionally vague as applied to [him], the [plaintiff] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties." (Internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 672–73.

"[T]he burden of showing that regulations are unconstitutionally vague rests with the plaintiff. . . . Moreover, the plaintiff is required to show that the regulation complained of is impermissibly vague as applied to the facts of the particular case." (Citations omitted.) *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, 222 Conn. 607, 620, 610 A.2d 1205 (1992). "The determination of whether a statutory provision is unconstitutionally vague is a question of law over which we exercise de novo review." *State* v. *Winot*, 294 Conn. 753, 758–59, 988 A.2d 188 (2010).

The plaintiff argues that he lacked adequate notice that his use of his property was prohibited because the construction/contractor's yard regulations do not include a definition for "construction/contractor's yard." We are not persuaded that a zoning regulation is necessarily vague because it contains a term that is not defined. See *Zarembski* v. *Warren*, 28 Conn. App. 1, 5, 609 A.2d 1039 (rejecting plaintiffs' argument that zoning regulation permitting use of accessory building as residence for up to three full-time employees was vague and unenforceable because it did not define "full-time employee"), cert. denied, 223 Conn. 918, 614 A.2d 831 (1992). Moreover, we are not persuaded that the plaintiff lacked adequate notice that his use of his property was governed by the construction/contractor's yard regulations.

A review of the record reveals that the plaintiff was fully aware that the construction/contractor's yard regulations applied to his use of his property. Valente issued

two cease and desist orders to the plaintiff, the second of which is the subject of this appeal. The first order, dated May 1, 2009, informed the plaintiff that he was in violation of the zoning regulations because he was impermissibly using his property as a construction/contractor's yard. The order described the plaintiff's prohibited activities as "[o]utside storage of seven (7) bulldozers, backhoes, trailers, excavators, and other construction equipment" and "[s]tockpiling and grading of soil." The order also indicated that, if the plaintiff wished to "legally establish this use," he could do so by submitting an application for a special exception and site plan approval under § 31 of the zoning regulations. The plaintiff then submitted an application for a special exception and site plan approval so that he could use his property as a construction/contractor's yard. In his site plan, the plaintiff stated that he planned to use his construction/contractor's yard for "the outside storage of vehicles, equipment and trailers and a wholesale operation for the distribution of landscaping materials." The plaintiff's application for a special exception was granted. The second cease and desist order was issued after the plaintiff continued to operate a construction/contractor's yard on his property without satisfying the conditions of the site plan.

The record indicates that the plaintiff received an initial cease and desist order that notified him that he was in violation of the construction/contractor's yard regulations and explained exactly what activities on the property constituted the violation. Having been notified that the construction/contractor's yard regulations applied to him, the plaintiff then submitted an application in which he sought approval for a permit to operate a construction/contractor's yard and stated how he was going to use his property in that manner. This evidence belies any claim that, prior to the issuance of the second cease and desist order, the plaintiff was unaware that the construction/contractor's regulations applied to his use of his property. See *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 257 Conn. 456, 481, 778 A.2d 61 (2001) (cease and desist order, which did not specify which furniture sold by plaintiffs was mass produced and thereby violated ordinance, did not deprive plaintiffs of due process because "[t]he plaintiffs' evidence submitted to the board in the site plan case indicated that they knew exactly which furniture was mass produced").

The plaintiff also claims that the lack of a definition of "construction/contractor's yard" allowed Valente and the commission to arbitrarily enforce the construction/contractor's yard regulations against him. We are not persuaded. The plaintiff alleges that the commission directed Valente to issue the cease and desist orders as a form of retribution arising out of an argument the plaintiff had with some members of the commission in 2005. The plaintiff refers to his testimony at the public

hearings underlying the present appeal, in which he informed the board that he had "a problem with the [commission] during an explosion back in 2005" when he was "being interrupted while I was talking and I told somebody to shut up and ever since then I've been on the chopping block, it seems like." The plaintiff has presented no other evidence that supports his claim that he has been the victim of arbitrary and discriminatory enforcement.

We conclude that the plaintiff has failed to show that the construction/contractor's yard regulations are impermissibly vague as applied to the facts of this case. The plaintiff has failed to meet his burden of demonstrating beyond a reasonable doubt that he lacked adequate notice that the construction/contractor's yard regulations applied to him or that he was the victim of arbitrary and discriminatory enforcement. Accordingly, we further conclude that the court improperly sustained the plaintiff's appeal on the ground that the construction/contractor's regulations were unconstitutionally vague as applied to him.

II

We next address the board's claim that the court improperly concluded that the board's decision upholding the second cease and desist order was not supported by substantial evidence. The board argues that its decision was supported by substantial evidence and that the court usurped the board's fact-finding function when the court found facts based on statements made at trial and inferred facts regarding the contents of documents not contained in the record. We agree that the board's decision was supported by substantial evidence.

The following additional facts are necessary for our resolution of this claim. During the public hearings on the second cease and desist order, the board heard evidence on whether the plaintiff was in violation of the construction/contractor's yard regulations. Valente informed the board that, after the plaintiff received approval for his site plan for the construction/contractor's yard, he "continued to run a [construction/contractor's yard] without a zoning compliance, a certificate of zoning compliance." Valente stated that "[i]t was evident, that from my perspective, that it was a contractor's yard, that the business was being run there."

At various points throughout the hearings, members of the board defined a contractor's yard. Chairman Joseph Narkawicz stated that "[a] contractor's yard, from what I heard from testimony, is his equipment's on the yard one day. It's gone. It comes back. It goes to a job. It comes back. That's a contractor's yard." He later stated that "[a] contractor's yard is, in any definition, in any book, dictionary, whatever, a place where you meet, you go over details with your employ-

ees, and then you go to a job site and you move equipment or tools." Board member Jeffrey Vose also stated that, if the plaintiff was storing equipment on his property and taking it to construction jobs elsewhere, "that's part of a contractor's yard."

Valente presented evidence that the plaintiff was using his property in the manner described by the board members as a contractor's yard. Valente stated that the plaintiff "leaves [his property] with his equipment to do jobs off site." Valente discussed some photographs he had taken of the plaintiff's property, including construction equipment that Valente had also photographed at different construction sites. Valente made the following statements to the board: "I had some of the photos that I took were blown up and this is just to show we had this white van and if you look at all of my inspections, you'll see that the white van is generally there . . . . I believe the white van is operated by one of [the plaintiff's] workers. . . . Here's that dump truck that's been there for greater than a year, the dump body that's been in the front for sale for greater than a year. The white van is, once again, here and the large dump truck and the small dump truck you can't see, is over here. . . . There's a screener where [the plaintiff], the activity I see on the property, is some screening of loam from a couple of the existing topsoil piles. . . . I happened to be going to the old Shaw's parking area where now will be the [Price Rite] . . . where [the plaintiff] had contracted, he's working there. This is the white van. I think it's pretty much the white van. At least it was a lot clearer to me when I looked at it than this picture shows. But this is the white van at that particular job site and here's a front end loader and couple of [the plaintiff's] workers. The other gentleman, I believe, spends most of his time in a blue pickup truck which I think [the plaintiff] owns. This is one of [the plaintiff's] vehicles, that's his dump truck and that's one of his workers and himself and these pictures are taken, these last few pictures are taken at the [Price Rite]. . . . So basically, these pictures and others I have show, that from my perspective, that [the plaintiff] has, is still employing or was still employing a couple guys and they're working or showing up at his property and then leaving and then occupied with him on a job site." Valente also stated that the plaintiff had a sign on his property with the words "Art Ogden Construction" on it.

Additionally, Narkawicz stated that he had personally witnessed trucks "going in and out" of the plaintiff's property, "[s]ometimes in the morning and sometimes at night." Residents of the plaintiff's neighborhood also informed the board that they believed the plaintiff was operating a construction business on his property. Pat Shimchick stated that she had seen a restaurant placemat with advertisements on it that "clearly shows [the plaintiff's property at] 6 Cherry Valley Road as

his business address and his residential phone as the business phone. . . . Additionally, friends report seeing his business card with the same information posted in local businesses. I believe that [the plaintiff] is operating a business at 6 Cherry Valley Road. As you may know, his driveway borders our backyard and our side yard. . . . On many early morning occasions I have observed commercial trucks being loaded onto a flatbed . . . . These maneuvers require three people, one operating the yellow shovel, one in the dump truck, and one directing the other two. Then the equipment leaves his yard and returns later that day or even several days later. I have also observed the larger dump truck being driven off site in the morning and then later return with a load of large stones and dirt, which is unloaded somewhere on his site. I have seen [the plaintiff] use the blue machinery, I believe somebody called that a screener, to sift soil, load it into a dump truck, cover it with a tarp and drive off site, returning later. There seem to be the same people who regularly arrive early in the day and may stay all day or get into other vehicles and drive off, returning later in the day to drive away in the vehicle that they parked earlier in the day."

Steven Shimchick stated that "there's not as much stuff there [on the property] now. There was a lot more equipment, a lot more equipment leaving, a lot of equipment coming back, a lot of supplies leaving and coming back. You know, it's, in my opinion, there had to be a business going on." Finally, Karen Friedmann stated that she observed construction activity on the plaintiff's property: "I do see activity. I see it in the morning. I hear the chains on the truck. I hear the dump truck going. I can see people out there, not every morning."

Additionally, Valente informed the board that he attempted to work with the plaintiff so that the plaintiff could accomplish the site plan within a reasonable time and continue to operate the contractor's yard, but the plaintiff refused to cooperate. Valente stated: "Typically when someone comes in and gets a special exception or site plan approval they don't currently have that business operating. . . . Unfortunately, [the plaintiff] was already occupying that property, running a construction business. I didn't want to see him have a severe financial loss by having to abandon the use on that property as a construction business so we tried to work with him from that day forward. Looking that there would be some compliance, some indication that he was moving toward satisfying the conditions of that special exception site plan approval."

Valente then described a series of letters he sent and telephone calls he made to the plaintiff in order to establish a time line for when the site plan would be finished, because the plaintiff "could not continue to operate a construction yard indefinitely and that work [for the site plan] had to be separated out and done so

that he could operate that construction yard. That he had gone doing, yes, he was doing some of that work but, at the same time, he was operating a construction business and he just couldn't continue to go in that vein." The plaintiff told the board that he had "started building the berms and cleared, cut the trees and cleared the area, stumped it . . . ." The plaintiff did not contest, either before the board or the court, the fact that he had not complied with the conditions of the site plan.

The plaintiff argued to the board that he was not using his property as a construction or contractor's yard. The plaintiff was represented at the hearing by Darlene Chapdelaine of Action Consulting and Associates. Chapdelaine informed the board that the plaintiff was "clearly developing his facility for a contractor's yard" but was not running a construction business there. She told the board that the only work the plaintiff was doing on his property was that associated with the completion of the site plan. Chapdelaine also stated that the plaintiff had received approval to use his property for "farm and nursery uses." She then asserted that the plaintiff was "in the process of developing" a wholesale garden and farm material business on his property and that he did not need to comply with the site plan or obtain a certificate of zoning compliance in order to do so.

Chapdelaine made additional statements that contradicted her earlier assertions that the plaintiff was not operating a contractor's yard on his property. She stated that the plaintiff was "trying to utilize everything that he possibly can for his resources to help keep the costs down to develop the property. And work at the same time." Additionally, she stated that the plaintiff "operates an excavation business. He needs the same equipment to do his job site as he does to do his own project. So it leaves the project and it comes back to the project." The plaintiff also spoke to the board and informed it that he works with "the guy with the white van. We meet there [on the plaintiff's property]. We drive together. And it doesn't make it a contractor . . . I didn't have any idea that that made it a contractor's yard."

After hearing all the evidence, the board met for a final time to make its decision. Vose, speaking to the plaintiff, stated: "There's a cease and desist because the permit that was granted [for the contractor's yard] had conditions on it. Those conditions have not been met . . . . I firmly believe that you need a certificate of zoning compliance before you can operate there. In order to get that, you gotta have those conditions met. So I think it's abundantly clear through the evidence provided by [Valente] and [advertisements] that were shown to us and so forth, that you're operating your business out of there." Three out of the other four board

members agreed with Vose.

Board member Gene Savoie disagreed that the plaintiff was operating a contractor's yard, stating: "I gotta disagree with you. . . . Because I don't see it as operating a business. I see it as storing or parking vehicles. They have to do with the business but it's not like he's running a Wal-Mart with customers coming in and out, lights on at night. . . . His construction equipment's got to be parked somewhere when it's not in use. And I don't see it, have an issue with it." In reply, Vose noted that "the only permit [the plaintiff] has right now is for storage within the building [already on his property] so right now he's not allowed to have anything outside that building. So, for him to operate a contractor's yard, which is what he wants to do, he has to comply with the conditions that were associated with that." The board then voted four to one to uphold the cease and desist order. A notice of decision was issued to the plaintiff, informing him that the cease and desist order had been upheld because "the records showed that [the plaintiff] was operating a contractor's yard . . . prior to receiving a certificate of zoning compliance."

The plaintiff then appealed to the Superior Court and the court sustained the appeal, finding that the board's decision to uphold the cease and desist order was not supported by substantial evidence. The court found that the plaintiff "was permitted to operate a nursery and, in addition, he was required to use his equipment on the parcel to make improvements in connection with his special exception. The record does not contain substantial evidence demonstrating that the plaintiff was doing anything more than what he was expressly required to do under the special exception, and what he was permitted to do in connection with his operation of a nursery on the parcel." (Footnote omitted.) The court referenced the plaintiff's trial testimony that "he lived on the property and carpooled to job sites daily with his employee, who parked his van on the property during the workday and then drove it home in the evenings. . . . He further testified that he operated a wholesale nursery on the property pursuant to a separate permit granting him permission to do so." The court also noted that Chapdelaine had informed the board during the public hearings that the plaintiff had a permit to operate a nursery on his property.

In a footnote, the court addressed the fact that "[n]either of the plaintiff's nursery permits are present in the record. Nevertheless, pursuant to Practice Book § 14-7B, it is the responsibility of the [board] to supply the court with the record, which includes 'any and all documents, transcripts, exhibits, plans, minutes, agendas, correspondence, or other materials . . . which are part of the return of record described in General Statutes § 8-8 (k).' As stated at the outset, the [board] filed

the Return of Record on December 14, 2011. Subsequently, it filed an index for a Supplemental Return of Record, entitled 'Certified List of Papers of Record' on January 26, 2012. The index states: '[T]he plaintiff has asserted that the record should be supplemented with additional documents. After conferring and reaching agreement on the documents to be considered as papers of record, the following is the certified list of the full record of the proceeding of the [board] upon which this appeal is predicated . . . .' The index lists, inter alia, the following additional documents: Item 12.s Nursery Inspection and Registration Certificate # 264 issued [August 1, 2011]; and Item 12.t Nursery Inspection and Registration Certificate # 264 issued 2006. Neither of those documents, and in fact none of the forty-four additional documents listed in the supplemental index were filed with the court. The index filed by the [board] provides adequate support for the plaintiff's testimony, which the [board] does not dispute, that he had a permit to operate a nursery on the parcel."

We now turn to the applicable standard of review. "In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [a zoning board] must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [board]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [board] supports the decision reached. . . . If a trial court finds that there is substantial evidence to support a zoning board's findings, it cannot substitute its judgment for that of the board. . . . If there is conflicting evidence in support of the zoning [board's] stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the [board]. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Citations omitted; internal quotation marks omitted.) *Municipal Funding, LLC* v. *Zoning Board of Appeals*, 270 Conn. 447, 453, 853 A.2d 511 (2004).

The board claims that the court improperly concluded that the board's decision to uphold the cease and desist order was not supported by substantial evidence. The board argues that the court improperly usurped the board's fact-finding role when it relied on the plaintiff's statements at trial and on documents outside of the record to determine that the plaintiff was operating a nursery on his property and that he had a permit to do so. We agree that the court improperly concluded that the board's decision was not supported by substantial evidence.

In an administrative appeal, "[i]t is not the function of the court to retry the case. Upon appeal the function of the court is to examine the record of the hearing before the board to determine whether the conclusions reached are supported by the evidence that was before it. The question is not whether the trial court would have reached the same conclusions but whether the record before the board supports the board's action." *O'Donnell* v. *Police Commission*, 174 Conn. 422, 426, 389 A.2d 739 (1978).

After reviewing the record before the board, we conclude that there was substantial evidence to support the board's finding that the plaintiff was operating a construction/contractor's yard without a certificate of zoning compliance. Narkawicz, the chairman of the board, stated that a construction/contractor's yard is "a place where you meet, you go over details with your employees, and then you go to a job site and you move equipment or tools." Valente presented ample testimony and photographic evidence that the plaintiff was using his property to house construction equipment that he took to construction sites elsewhere and then returned to the property. There was also evidence that the plaintiff met with his employees at the property and then traveled to construction sites with them from there. Narkawicz stated that he had personally witnessed construction vehicles coming and going from the plaintiff's property. Residents of the plaintiff's neighborhood also testified that they had seen and heard construction equipment and construction activity on the property, including the equipment leaving and returning. The plaintiff had a sign on his property that read "Art Ogden Construction," and local advertisements for his construction business listed his property as the business' address. From this evidence, the board could have reasonably concluded, as it did, that the plaintiff was operating a construction/contractor's yard on his property.

The only evidence in the record that the plaintiff had a permit to operate a nursery and that he was doing so was the statement by Chapdelaine that the plaintiff had approval to use his property for farm and nursery uses and that he was in the process of developing his property for a wholesale garden and farm material business. The board was not required to credit Chapdelaine's statement. "The credibility of witnesses and the determination of issues of fact are matters within the province of the administrative board." *O'Donnell* v. *Police Commission*, supra, 174 Conn. 426. In finding that the activity taking place on the plaintiff's property was related to the operation of a construction/contractor's yard, the board rejected Chapdelaine's argument that the plaintiff was operating a nursery. It is evident from the court's memorandum of decision that it credited the plaintiff's statements at trial that he was operating

a nursery and that he had a permit to do so. However, in an administrative appeal, the court is not permitted to consider evidence that was not before the board, such as the plaintiff's statements at trial, or substitute its judgment for that of the board. Id.; see also *Municipal Funding, LLC* v. *Zoning Board of Appeals*, supra, 270 Conn. 453.

We also note that the record before the board does not contain a copy of the plaintiff's application for a nursery permit or the permit itself. The only zoning applications in the record are the plaintiff's application for a permit to build a storage facility on his property, which the board acknowledged he had received, and his application for the special exception for the construction/contractor's yard, subject to the conditions of the site plan. The court, in determining that the plaintiff possessed a permit to operate a nursery, referenced the "Certified List of Papers of Record" filed by the board on January 26, 2012. The certified list included two documents labelled as "Nursery Inspection and Registration Certificate # 264 issued [August 1, 2011]" and "Nursery Inspection and Registration Certificate # 264 issued 2006." These documents were listed under the heading "Supplemental documents added to certified list of record documents at the request of the plaintiff." The board noted in a footnote to its filing that it could not certify that any of the supplemental documents, including the nursery inspection and certificates, were part of the record at the time of the public hearings, but it did not object to the addition of the documents to the certified list of record documents.

Even if we assume that the nursery permits were in the record before the board at the time of the public hearings and that they were issued to the plaintiff for his property, we continue to conclude that the board's decision to uphold the cease and desist order was supported by substantial evidence. The plaintiff attempted to argue before the board that he was conducting a nursery operation on his property. The board rejected the plaintiff's argument and found instead that the plaintiff was operating a construction/contractor's yard without satisfying the conditions of his site plan. The plaintiff then appealed to the court and again made the argument that he was operating a nursery. Unlike the board, the court credited the plaintiff's claims about the nursery operation and referenced the nursery permits as proof. However, "[i]f there is conflicting evidence in support of the zoning [board's] stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the [board]. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Internal quotation marks omitted.) *Municipal Funding, LLC* v. *Zoning Board of Appeals*, supra, 270 Conn. 453. "The question is not whether the trial court would

have reached the same conclusions but whether the record before the board supports the board's action." *O'Donnell* v. *Police Commission*, supra, 174 Conn. 426. As we have previously explained, there was ample evidence from which the board could reasonably conclude that the plaintiff was operating a construction/contractor's yard on his property. Thus, the court improperly sustained the plaintiff's appeal on the ground that the board's decision to uphold the cease and desist order was not supported by substantial evidence.

The judgment is reversed and the case is remanded to the Superior Court with direction to render judgment dismissing the plaintiff's appeal.

In this opinion the other judges concurred.

[1] The plaintiff raised a number of claims in his trial brief that were not included in the appeal. Only the vagueness claim is before this court.

[2] Practice Book § 10-60 (a) provides in relevant part: "Except as provided in Section 10-66, a party may amend his or her pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner:

"(1) By order of judicial authority; or

"(2) By written consent of the adverse party; or

"(3) By filing a request for leave to file such amendment . . . ."

[3] We note that, even if we concluded that the construction/contractor's yard regulations were unconstitutionally vague, our decision would not benefit the plaintiff. Under the regulations, only uses expressly authorized in section 31 are permitted in commercial zones. If we were to hold that the construction/contractor's yard regulations were invalid, then no one owning a commercially zoned property in Columbia would be able to use that property as a construction/contractor's yard, including the plaintiff. See *Gada* v. *Zoning Board of Appeals*, 151 Conn. 46, 48, 193 A.2d 502 (1963) (when zoning regulations are permissive in character, "[a]ny use which is not specifically permitted is automatically excluded").